IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JARROD M. GREEN (TDCJ No. 1742585), | § § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:15-cv-1656-M-BN |
| LORIE DAVIS, Director Texas Department of Criminal Justice, Correctional Institutions Division,[1] | § § § § § | |
| Respondent. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Jarrod M. Green, a Texas inmate at the time, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below, the application should be denied.

**Background**

Following a guilty plea to drug possession, which offense occurred in March 2007, Green was sentenced to six years' deferred community supervision. *See State v. Green*, No. F-0723707-L (Crim. Dist. Ct. No. 5, Dallas Cnty., Tex. July 9, 2007). But, after the State moved to revoke his community supervision, and after Green pleaded true to the revocation motion, his guilt was adjudicated, and he was sentenced to three

---

[1] Lorie Davis has succeeded William Stephens as Director of the Texas Department of Criminal Justice, Correctional Institutions Division, and, as his successor, she is "automatically substituted as a party." FED. R. CIV. P. 25(d).

years' imprisonment. *See State v. Green*, No. F-0723707-L (Crim. Dist. Ct. No. 5, Dallas Cnty., Tex. Sept. 19, 2011). The current habeas application, however, concerns a 2014 parole board decision denying Green's release to discretionary mandatory supervision ("DMS"). *See* Dkt. No. 3 at 8-10.

Green's state habeas application concerning claims related to the parole board's 2014 denial was denied by the Texas Court of Criminal Appeals (the "CCA"), without a written order on the findings of the trial court made without a hearing. *See Ex parte Green*, WR-83,068-01 (Tex. Crim. App. Apr. 22, 2015); *see also* Dkt. Nos. 11-1 at 1 & 11-2 at 76 (CCA order and trial court order finding no controverted, previously unresolved factual issues requiring a hearing). Green's timely Section 2254 habeas application followed.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.,*

*Dowthitt*, 230 F.3d at 756-57 (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713; *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the

state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. \_\_\_, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which

federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98

("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## Analysis

Green contends, through four separate grounds, that the parole board abused its discretionary authority in its 2014 denial of his release to DMS and that the parole board violated his rights to due process and to equal protection. *See, e.g.,* Dkt. Nos. 2 & 3.

"Eligibility for mandatory supervision is governed by the 'law in effect at the time the holding offense was committed.'" *Kirsch v. Quarterman*, Civ. A. No. H-07-524, 2008 WL 3003919, at *4 (S.D. Tex. Aug. 1, 2008) (quoting *Ex parte Thompson*, 173 S.W.3d 458, 458 (Tex. Crim. App. 2005)). In this regard, it is settled that "[a] constitutional expectancy of early release exists only in Texas' mandatory supervision scheme in place for crimes committed before September 1, 1996" – well before Green

committed the 2007 drug-possession offense. *Id.* (citing TEX. GOV'T CODE ANN. § 508.149(b); *Malchi v. Thaler*, 211 F.3d 953, 957-59 (5th Cir. 2000)); *see also Gonzales v. Thaler*, No. 2:09-cv-121, 2011 WL 4014326, at *2 (N.D. Tex. Aug. 19, 2011), *rec. adopted*, 2011 WL 3927057 (N.D. Tex. Sept. 7, 2011) ("The [United States Court of Appeals for the] Fifth Circuit recognizes that prior to September 1, 1996, 'the TDCJ-CID had no discretion in deciding when or if to release an inmate on mandatory supervision,' but that as of September 1, 1996, a discretionary mandatory supervision scheme passed by the Texas Legislature took effect." (quoting *Teague v. Quarterman*, 482 F.3d 769, 774-75 (5th Cir. 2007))). In 2007, the applicable statute in effect provided that "an inmate may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." TEX. GOV'T CODE ANN. § 508.149(b) (West 2007).

Therefore, while there is no constitutional right to conditional release prior to the expiration of a valid sentence, *see Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), under the "discretionary mandatory supervision scheme" applicable here, "both the Fifth Circuit and the Texas courts have held there is a protected liberty interest," entitling a Texas inmate "eligible for released on mandatory supervision" "to the due process protections established by the Supreme Court in *Wolff[ v. McDonnell*, 418 U.S. 539 (1974)]," *Dillard v. Thaler*, Civ. A. No. H-09-1373, 2010 WL 3056654, at *4 (S.D. Tex. July 30, 2010) (citations omitted).

Under that standard, a prisoner is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff*, 418 U.S. at 557; *cf. Lopez v. Quarterman*, 225 F. App'x 243, 244 (5th Cir. 2007) (per curiam) (where it was unclear whether a petitioner "was alleging that he was entitled to release on mandatory supervision or on parole as he identified both kinds of release in his petition," granting a certificate of appealability as to a petition dismissed as frivolous, because "Lopez has no liberty interest in being released on parole, but he may have a liberty interest in being released on mandatory supervision under current Texas law" (citing TEX. GOV'T CODE §§ 508.147, 508.149; *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997); *Malchi*, 211 F.3d at 957-58; *Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000) (en banc))).

As applicable here,

> constitutional due process requires that an eligible inmate be provided timely notice of the specific month and year he will be considered for mandatory supervision release and a meaningful opportunity to be heard – i.e., an opportunity to tender or have tendered to the Board information in support of release. *Ex parte Geiken*, 28 S.W.3d at 559-60; *Ex parte Ratzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004). Additionally, if release is denied, the inmate must be informed in what respects he falls short of qualifying for early release. *Ex parte Geiken*, 28 S.W.3d at 560.

*Brookins v. Stephens*, No. 4:14-cv-939-A, 2015 WL 9450619, at *2 (N.D. Tex. Dec. 22, 2015).

As reflected in the parole board documentation Green submitted with his federal habeas petition, *see* Dkt. No. 3 at 8-11, he was provided "timely notice that he would

be considered for mandatory supervision release, an opportunity to present or have presented evidence to the Board in support of his release, the reasons for the Board's denial, and the month and year he would be next considered. Accordingly, he received all the due process he was due." *Brookins*, 2015 WL 9450619, at \*3; *see id.* ("The Board is not required to be more specific when stating the reasons for its decision or to provide evidence in support of its decision. Nor does the Board's failure to follow its own procedural rules and regulations establish a per se violation of petitioner's due process." (respectively citing *Boss v. Quarterman*, 552 F.3d 425, 428-29 (5th Cir. 2008); *Dixon v. Hastings*, 202 F. App'x 750, 751 (5th Cir. 2006) (per curiam))).

As to Green's claimed equal-protection violation – that his "mandatory out date was treated completely different from other administrative rule violator," Dkt. No. 3 at 6-7 – this claim is conclusory and insufficient to even allege an equal protection claim. *See Clark v. Owens*, 371 F. App'x 553, 555 (5th Cir. 2010) (per curiam) ("Clark's conclusory assertions that he was treated differently than other similarly situated inmates are insufficient to state an equal protection claim." (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986))); *cf. Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007) (per curiam) ("In contrast, we find no error in the district court's dismissal of Kyles's equal protection claim. He correctly asserts that the Equal Protection Clause may give rise to a cause of action on behalf of a 'class of one,' if the plaintiff shows that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Beyond conclusional allegations that others similarly situated have been granted parole,

though, Kyles offers no specific factual support for his assertions." (citations omitted)).

In sum, as to the denial of Green's habeas claims, the undersigned finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of the facts in light of the evidence.

## Recommendation

The Court should deny the application for writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 22, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE